TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
DIANE ROLDÁN (Cal. Bar No. 288224)
ALEXANDRA SLOAN KELLY (Cal. Bar No. 305811)
Assistant United States Attorneys
Major Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6567
    E-mail:   diane.roldan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>BYROM ZUNIGA SANCHEZ,<br><br>        Defendant. | No. 8:24-cr-00030-FWS<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT BYROM ZUNIGA SANCHEZ<br><br>Hearing Date: March 5, 2026<br>Hearing Time: 1:30 p.m.<br>Location:   Courtroom 10D |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Diane Roldán and Alexandra Kelly, hereby files its Sentencing Position For Defendant Byrom Zuniga Sanchez.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the Declaration of Diane Roldán, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 19, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


_____/s/_____
DIANE ROLDÁN
ALEXANDRA SLOAN KELLY
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                PAGE

**MEMORANDUM OF POINTS AND AUTHORITIES**                                   **1**

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS...........................................2

      A.    Overview...............................................2

      B.    2019-2021: Defendant's Family Law Case with Judge Leal....3

      C.    2021-2022: Defendant Threatens the DA, the DA's Wife,
            and the Investigator in Response to the Family Law
            Case...................................................3

      D.    2022-2023: Defendant Repeatedly Violates the
            Restraining Order Protecting the Mother of His Child......4

      E.    May 2023: Early Emails to Judge Leal...................5

      F.    Count 1: June 20, 2023 Email Demanding "Your Suicide".....6

      G.    Count 2: July 24, 2023 Email: "It is time you die.".......7

      H.    July 25, 2023 "Active Shooter" Threat Against
            Courthouse.............................................8

      I.    October 5, 2023: The Manifesto Video...................9

      J.    October 13, 2023: Joint Law Enforcement Response........11

III.  DEFENDANT'S CONDUCT AND STATEMENTS AT TRIAL.................12

IV.   PROBATION'S SENTENCING CALCULATIONS.........................14

V.    ARGUMENT....................................................15

      A.    Defendant's Childhood Traumas and Mental Health Issues
            Are Mitigating Factors................................15

      B.    The Seriousness of Defendant's Threats Warrants a
            Strong Deterrent Sentence.............................16

            1.    The Nature and Circumstances of Defendant's
                  Offenses.........................................16

            2.    Defendant's Personal History and Characteristics....18

VI.   CONCLUSION..................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In 2023, defendant Byrom Zuniga Sanchez threatened to murder Orange County Superior Court Judge Sandy Leal, execute a mass shooting at the courthouse, and "literally kill innocent Americans." (Trial Ex. 9C.)  Enraged by Judge Leal's rulings in his family court case, defendant told Judge Leal: "I will fucking kill you, but that's after your kids die."  (Trial Ex. 9-I.)  "I am more committed to murdering you than I am to being present as a father," he wrote. (Trial Ex. 7.)  In one email to her, defendant warned that the "remainder of my life will be dedicated to assassinating judges, attorneys, and a police station's entire shift staff."  (Id.)

Following a three-day trial, the jury convicted defendant of two counts of threats, in violation of 18 U.S.C. § 875(c).  Count 1 was based on defendant's June 20, 2023 email to Judge Leal's courtroom threatening, "Your suicide doesn't suffice."  (Trial Ex. 5.)  Count 2 was based on his July 24, 2023 email to Judge Leal titled "Sandy—It is time you die."  (Trial Ex. 7.)

During the trial, defendant demonstrated his contempt for the rule of law and his obvious pleasure in re-victimizing Judge Leal. He showed absolutely no remorse.  In his closing, defendant shouted racist jokes at the jury before announcing, "I don't care … I give no fucks."  (Dec. 4, 2025 Tr. 37:9, 46:23-25.)  Defendant argued that his misogynist death threats were either justified or an extended morbid joke.  The jury rejected these excuses.

In its Presentence Investigation Report ("PSR"), the United States Probation and Pretrial Services Office ("Probation") calculated defendant's total offense level as 24, and his criminal

history category as I, pursuant to the United States Sentencing Guidelines ("guidelines"). (Dkt. 132 at 88.) Probation calculated defendant's guidelines imprisonment range as 51 to 63 months and recommended a total sentence of 63 months. (Dkt. 131 at 2.)

The United States agrees with Probation's calculations; however, a higher sentence is warranted pursuant to 18 U.S.C. § 3553(a). An above-guidelines sentence is necessary because: (1) the guidelines alone do not account for the full scope of defendant's threats and victims; (2) defendant's criminal history category understates his recidivism risk; and (3) defendant's utter lack of remorse at trial increases the need for specific deterrence.

The government respectfully recommends a total sentence of 72 months' incarceration on Counts 1 and 2, to run concurrently, plus three years of supervised release, no fine, a mandatory special assessment of $200, and restitution of $22,798.12. This sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

## II. STATEMENT OF FACTS

### A. Overview

As described below, defendant's threats to Judge Leal were part of a course of conduct that threatened not only her, but also all those who worked at the Lamoreux Justice Center and many others defendant associated with his family law case, including: defendant's child, the mother of his child ("the Mother"), her parents ("the Mother's Parents"), her brother ("the Mother's Brother"), her friend ("the Mother's Friend"), the investigator from the family law case ("the Investigator"), the District Attorney ("the DA"), and his wife ("the DA's wife"). Defendant threatened these individuals often in

1  the same emails and videos he used to threaten Judge Leal.  His

2  actions show the need for specific deterrence here.

3      **B.    2019-2021: Defendant's Family Law Case with Judge Leal**

4      In April 2019, the Mother of defendant's child obtained a

5  domestic violence restraining order against defendant from the Orange

6  County Superior Court, at the Lamoreaux Justice Center.  (PSR ¶ 4-6.)

7  In response, on May 14, 2019, defendant filed a separate paternity

8  case.  (Id.)  These cases were consolidated and assigned to Judge

9  Leal.  (Id.)  During the proceedings, defendant made allegations

10  against both the Mother and the Mother's Friend, which the

11  Investigator determined were "unfounded."  (Id.)

12      In 2021, Judge Leal granted the Mother sole legal custody of the

13  child and issued a three-year domestic violence restraining order

14  against defendant protecting the Mother and the Mother's Parents.

15  (PSR ¶¶ 89-90; Roldán Decl., Ex. 9.)  This restraining order was in

16  full force and effect during the following events.  (See id.)

17      **C.    2021-2022: Defendant Threatens the DA, the DA's Wife, and**

18          **the Investigator in Response to the Family Law Case**

19      After losing custody of his son, defendant began a campaign of

20  retribution against all those whom defendant blamed for the custody

21  case.  On October 3, 2021, defendant drove to the DA's home, where he

22  found the DA's wife and asked her, "Is [the DA] home?"  (PSR ¶¶ 11-

23  12.)  She said no.  (Id.)  Defendant responded, "Tell him Byrom

24  stopped by."  (Id.)  Afterward, defendant told police "that he was

25  very upset about a custody hearing involving his son" and that "he

26  believed [the DA] would be able to prosecute those who had … caused

27  him to lose his case."  (Id.)

28      Defendant also threatened the Investigator from his case with

Judge Leal.  (PSR ¶ 13.)  On December 21, 2021, she received Instagram posts from defendant using his account "Awarewolf777."[1] (Id.)  The posts were threatening in nature, referenced exorcisms, and said things like, "You will never understand the damage you did to someone until the same thing is done to you," and "You better pray tonight."  (Id.)  The Investigator obtained a workplace violence restraining order protecting her from defendant on May 16, 2022. (Id.)

### D.  2022-2023: Defendant Repeatedly Violates the Restraining Order Protecting the Mother of His Child

In 2022 and 2023, defendant repeatedly violated the domestic violence restraining order Judge Leal issued against defendant to protect the Mother, defendant's son, and the Mother's Parents.  (Id. ¶ 10.)  He violated the restraining order on or about April 21, 2022, May 4, 2022, January 10, 2023, June 20, 2023, July 23, 2023, and July 24, 2023.  (Id.)

These violations endangered the public.  As just one example, during the May 4, 2022 violation, defendant drove to the Mother's Parents' home, who were protected by the restraining order.  (Id.; Roldán Decl., Ex. 5.)  Defendant stood outside their house with a bullhorn, yelling about the family court case.  (Id.)  Among other things, defendant screamed, "I went and emailed all the fuckin attorneys, the judge, I went to [the DA]'s house" and "I will fuckin ruin your lives."  (Id.)  The family called the police, who made a report.  (Id.)  Later that same day, defendant returned to the Mother's Parents' house with his bullhorn.  (Id.)  Police responded

---

[1] Defendant used the account "awarewolf7" to threaten Judge Leal.

4

again, this time with lights and sirens, but defendant drove off instead, starting a high-speed police chase.  (Id.)  Defendant drove through red lights and up to 60 miles an hour to evade police.  (Id.)  When defendant finally stopped, he barricaded himself in his car.  (Id.)  Police were forced to call a SWAT and crisis negotiator, before he finally surrendered and was taken into custody.  (Id.)

As a result of his domestic violence restraining order violations, defendant has three pending criminal cases and outstanding warrants.  (PSR ¶¶ 64-66.)  One of those criminal cases arose from defendant's arrest on May 4, 2022, as just described.  (See PSR ¶ 65.)  According to defendant's claims during closing, in the summer of 2023, defendant voluntarily flew to Mexico with that criminal case pending.  (See, e.g., Dec. 3, 2025 Tr., Vol. II at 35; Dec. 4, 2025 Tr. at 41.)  Defendant became a fugitive from the proceedings and bench warrants were issued in August and September 2023.[2]  (See PSR ¶ 65.)

**E.    May 2023: Early Emails to Judge Leal**

In 2023, defendant continued his retribution campaign.  On May 16, 2023, at 4:20 p.m., he emailed Judge Leal's former courtroom at "C65@occourts.org."  (Trial Ex. 3.)  In the email, he demanded that she "Resign immediately."  (Id.)  That same email also threatened the Mother's Friend, writing: "Command the Orange County Sheriff Department to terminate [the Mother's Friend] and remove all weapons."[3]  (Id.)  And defendant continued to perseverate on the DA,

---

[2]  As described below, defendant's criminal history understates his recidivism risk.  Had defendant not absconded to Mexico, he would have faced prosecution for three separate domestic violence restraining order violations.

[3]  As noted above, defendant associated the Mother's Friend with his custody dispute before Judge Leal.

writing, "Instruct the Orange County District Attorney to press charges against the individual," referring again to the Mother's Friend. (Id.)  Approximately two hours after the first email, on May 16, 2023, at 6:16 p.m., defendant emailed Judge Leal again, demanding that she "Look into my eyes" and attaching a disturbing picture of himself. (Trial Ex. 4.)

   **F.    Count 1: June 20, 2023 Email Demanding "Your Suicide"**

   On June 16, 2023, defendant attempted to enter the United States from Mexico at the San Ysidro Port of Entry. (PSR ¶ 17.)  Four days later, on June 20, 2023, defendant sent the email that forms the basis of Count 1. (Trial Ex. 5.)  He wrote to Judge Leal: "Your suicide doesn't suffice, and it won't cure nor redirect what is coming for you.  I haven't received your resignation ….  You have until EOB to determine if you will quit, or be a fraction of the person you present yourself as." (Id.)  Notably, that same day, on June 20, 2023, defendant also violated the domestic violence restraining order Judge Leal issued protecting the Mother. (PSR ¶ 10; Roldán Decl., Ex. 6.)

   A few days later, on July 2, 2023, defendant emailed Judge Leal again. (Trial Exs. 6, 10.)  This email only contained a link to a music video titled "You Make Me Sick." (Id.)  This video contains grotesque images of women's faces distorted by black growths and women being rapidly force-fed a brown liquid (potentially feces[4]) through tubes affixed to their mouths. (Id.)

---

   [4] Recall defendant's Count 2 email threat: "I'm going to shove a funnel in you, shit in it, then flush it into you with my piss, dirty cunt."  (Tr. Ex. 7.)



**G.    Count 2: July 24, 2023 Email: "It is time you die."**

Later that month, on July 24, 2023, defendant emailed Judge Leal the Count 2 threats.  (Trial Ex. 7; Roldán Decl., Ex. 3.)  It was titled: "Sandy—It is time you die."  (Id.)  In the email, defendant threatened to graphically murder Judge Leal and her children.  Below are the things he wrote:

- "I am more committed to murdering you than I am to being present as a father."
- "Imagine your life is a light switch, and I choose to turn you off and rip the switch out of the wall."
- "If you caused death from failure, your adult children will also be payment."
- "Remember I wouldn't fuck your cunt when you're dead, even if you didn't have more bacteria in there than Tijuana sidewalk water."
- "The remainder of my life will be dedicated to assassinating judges, attorneys, and a police station's entire shift staff."
- "Do you have any last words, apologies, or regrets you want to communicate before I lawfully kill you …."
- "You're already dead."

In this Count 2 email, between death threats, defendant also referenced the Investigator and the Mother, calling the latter "the retarded bitch."  (Id.)  Moreover, that same day, July 24, 2023, defendant texted the Mother, in violation of the restraining order:

7

"Are  you ready to die?  I am ready to murder you and your brother …
I have 100% made up my mind, I will first murder your brother, then
you.  There is no way out, and if anyone tries to stop me, I WILL
force others to kill your entire family. …  [*The Mother's Friend*]
will pay.  The court investigator will be brought to the verge of
death … and the judge will lose her children to fate…  I look forward
to blowing your brains out and pissing in your skull while deputies
respond just to get ambushed and murdered themselves.  I've killed an
OC DA, a deputy leaving shift…  Mark my words, your days are almost
over."  (Roldán Decl., Ex. 4.)

Recalling defendant's text messages, the Mother wrote of the
trauma she has experienced from his terror campaign:

> **The defendant threatened my life and my family's lives on
> multiple occasions.**  He explained in detail how he would end
> my life and how much he would enjoy it.  **He described how he
> would kill my dad, my mom, and my brother.** This was all
> through text messages and kept reminding me over and over
> through texts even though I had an active restraining order
> against him.  I look back on one of the many occasions where
> he spelled out how he would shoot me in the head and to enjoy
> my last days with multiple vulgar names.  **I don't know to
> articulate the fear that rushed through every nerve fiber of
> my body or how [my] stomach sank and rose to my throat at
> the exact same time.**  I don't know how to express the amount
> of sleep I lost due to the nightmares I experienced of him
> finding me out while at the store or when I walked into work.
> I don't know how to put into words the embarrassment of
> asking managers and coworkers to walk me to and from my car
> because I was afraid of him ambushing me. My body was in
> constant fight or flight mode. **I never felt safe.** I was
> afraid to be in my own home with my son and family.  My son
> and I fled to a friends house for a couple of months because
> I was too scared to be home…. **Most of all, I was afraid for
> my son.**

(Roldán Decl., Ex. 1.)

## H.    July 25, 2023 "Active Shooter" Threat Against Courthouse

The day after defendant sent the Count 2 email and threatened to
murder both Judge Leal and the Mother, defendant issued a mass

8

shooting threat.  (Trial Ex. 1.)  On July 25, 2023, defendant wrote a public Instagram post titled: "Active shooter – Lamoreaux Justice Center."  (Id.)  The posting planned the "active shooter" event for "Friday the 13th, October 2023," in response to "everything horrid that transpired at Lamoreaux."  (Id.)  The post referenced defendant's "2nd amendment" rights and a "mass shooting."  (Id.)  He wrote: "I am the gorilla and I will murder everything responsible for traumatizing my son.  Fuck you and your abuse of laws, dirty whore." (Id.)

### I.    October 5, 2023: The Manifesto Video

On October 5, 2023, just days before the planned October 13, 2023, mass shooter event, defendant publicly posted an hour-long manifesto video to his Instagram account threatening murder.  (See Trial Exs. 9A-N; Roldán Decl., Exs. 7, 8.)  In the video, defendant threatened to "literally kill innocent Americans."  (Trial Ex. 9C.)

Defendant faced the camera and directly addressed Judge Leal. (Trial Ex. 9F.)  He assured her, in unmistakably serious tones, that he was going to kill her children: "*I will fucking kill you, but that's after your kids die.  Do you understand, mother fucker?  If you have adult children, your children are fair game.  If you have adult children, your children are fair game.  If you have adult children, your children are fair game.  If you have adult children, your children are fair game.*"  (Trial Ex. 9I.)  He wanted so badly to make sure that Judge Leal was always "*wondering is someone gonna fucking kill me at this intersection?  Is someone gonna come into the workplace and assault you and shoot you in the fucking head?*"  (Trial Ex. 9G.)

9

The following is a still image from the video, as defendant states: "*We will come find you.  We will hunt you.  We will fucking kill you, but before that ever happens, we are gonna grab whatever it is that you fucking love by the head and I'm gonna make sure that you stare me in the fucking eyes while we kill everything that you fucking love.  Does that make sense?  If you want to watch your loved ones die while I force you to stare at me in the eyes, this is where we are at.*"  (Trial Ex. 9H.)



In the same full video, defendant also attacked the Mother, saying, "I don't give a fuck about the restraining order.  She is not worthy as a mother."  (Roldán Decl., Ex. 7.)  And defendant again targeted the DA and his family, yelling: "[DA's full name], I came to your fucking house.  You sent your wife outside…  When you avoid me, I will get frustrated.  If you continue to hurt my child, I will start killing things and that's where we're at"; "[DA] sends his wife out, that's a fucking German-Jew.  We know what happened with those mother fuckers years ago."  (Id.)

Ultimately, defendant's own words in this video demonstrate his intent to "get intentionally and more viciously cruel, vicious and violent."  (Trial Ex. 9M.)

10

1          **J.    October 13, 2023: Joint Law Enforcement Response**

2          Law enforcement took defendant's threats seriously.  At trial,

3    Orange County Sheriff's Department ("OCSD") Sergeant Gene Minko

4    testified that law enforcement created a state and federal task force

5    that included representatives of the FBI, OCDA, the Judicial

6    Protection Unit, and SWAT.  (PSR ¶ 24; Dec. 2, 2025 Tr., Vol. II at

7    94-96.)  On October 13, 2023, they established "Operation Safe

8    Justice," a mission to protect the courthouse from an active shooter.

9    (Id.)  Because law enforcement determined that defendant's threat was

10   credible, they informed all employees at the Lamoreaux Justice Center

11   that an active shooter threat had been made for that day.  (Id.)

12   Some employees asked to stay home because they were afraid of being

13   shot.  (Id.)  Law enforcement monitored the freeways and set up a

14   command post to coordinate on-site responses at the courthouse.

15   (Id.)  SWAT teams provided support at the Lamoreaux Justice Center,

16   and OCSD teams were deployed to both the Lamoreaux Justice Center and

17   the Central Justice Center, where Judge Leal then worked.  (Id.)

18   OCSD ultimately spent $22,798.12 on responding to defendant's

19   threats.  (Id. ¶ 31; Roldán Decl., Ex. 2.)

20         Judge Leal also testified in emotional detail on her efforts to

21   protect her family.  (See PSR ¶ 25; Dec. 3, 2025 Tr., Vol. I at 47-

22   49.)  She made the heart-wrenching choice to show her children a

23   picture of defendant, in case he tried to abduct them.  (Id.)  She

24   told them not to play outside, and there were police patrols outside

25   her house.  (Id.)  On cross examination, Judge Leal explained to

26   defendant, "What I believe is what you said, which was that you would

27   kill my children or kill my family that was dear to me in front of

28   me."  (Dec. 3, 2025 Tr., Vol. I, at 84:18-20.)

**III. DEFENDANT'S CONDUCT AND STATEMENTS AT TRIAL**

Trial lasted for three days, and defendant represented himself. During his cross-examination, defendant appeared to relish re-reading his threats aloud to Judge Leal. (See, e.g., Dec. 3, 2025 Tr. Vol. I at 71:4-5 [AUSA: "this is a victim of a threat, and its starting to feel like that kind of behavior is happening right before our eyes"].) For example, defendant played for Judge Leal Exhibit 10 – the grotesque video of female torture – without even asking her a question afterwards; he just wanted her to relive it. (Id. at 77:11-16.) As another example, defendant read one of his threats aloud, "I'm going to shove a funnel in you, shit in it, then flush it into you with my piss, dirty cunt," and then asked, "Do you feel that this itself is a demonstration of abusive language or simply, you know, like an unhinged direct attack?" (Id. at 78:10-17.) "Both," said Judge Leal. (Id.) "Both," defendant repeated. (Id.) At two other points, defendant suggested he was offering Judge Leal a "professional courtesy" by only threatening to murder her "adult children," as opposed to any "minor children." (Id. at 80:17-25 and 84:18-85:3; see also Trial Ex. 7 ["If you caused death from failure, your adult children will also be payment."].)

After the government's case, defendant testified on his own behalf. He testified both that the threats were a justified response to the evils of the justice system, and also that this was all an extended joke or "stand-up comedy" bit. (See, e.g. Dec. 3, 2025 Tr., Vol. II at 33-34.)

Defendant showed no remorse, and even seem to mock his own death threats and the trial itself. For example, defendant asked himself, "Can you help us understand what you meant by I am the gorilla and,

12

1   you know, I will murder everything responsible for traumatizing my

2   son?"  (Id. at 37:23-38:17.)  He responded by suggesting that "when

3   it says murder, I mean really … a colloquial statement is murdering

4   the pussy, right?"  (Id.; see also id. at 72 [racist jokes].)

5       Defendant later quoted his "Active Shooter" Instagram post and

6   asked himself what he meant.  (Id. at 40.)  Defendant responded by

7   citing the Second Amendment and testifying, "If you feel the

8   government is [acting] in a tyrannical manner, perhaps taking arms,

9   if it was 1775, you know, we'd be at someone's funeral right now."

10  (Id. at 41.)  For the Count 2 threat ("Sandy-It is time you die"),

11  defendant invited himself to "please read this e-mail at length."

12  (Id. at 52.)  He then re-read his threats aloud, at length, in a

13  dramatic and frightening voice.  (See id.)

14      In his closing, defendant demonstrated his contempt for the law

15  and the court proceedings.  Defendant began his closing by yelling a

16  truly vile racial epithet at the jury.  (Dec. 4, 2023 Tr. at 37:9;

17  see also id. at 44:19-24 [subjecting the jury to misogynistic "jokes"

18  about women's anatomy].)  Defendant then explained what he meant by

19  the Count 1 threat against Judge Leal, "Your suicide doesn't

20  suffice."  (Id. at 37:20-23.)  It meant, defendant said, "You are

21  going to face the music on this one.  That's exactly what that

22  means."  (Id.)  There was no remorse: his death threats were no rash

23  mistakes of the moment; defendant said exactly what he had intended.

24      After short deliberations, the jury returned a unanimous verdict

25  finding defendant guilty on both counts of 18 U.S.C. § 875(c).  (Id.

26  at 80-81.)

27

28

1    **IV.   PROBATION'S SENTENCING CALCULATIONS**

2        Probation calculated defendant's criminal history category as I,

3    and his total offense level as 24.  (PSR ¶ 88.)  Defendant faces a

4    maximum term of imprisonment of ten years, based on two convictions

5    of 18 U.S.C. § 875(c).  (Id. ¶ 87.)  Probation recommends a term of

6    imprisonment of 63 months.  (Dkt. 131 at 2.)  The United States

7    agrees with Probation's calculations and recommendation.

8        Defendant's base offense level is 12 pursuant to Guidelines,

9    section 2A6.1(a)(1).  (PSR ¶ 39.)  Probation applied a two-level

10   increase because defendant's offense "involved more than two

11   threats."  (Id. ¶¶ 40-41, citing U.S.S.G. § 2A6.1(b)(2)(A).)  A

12   further four-level increase applies because defendant's offense

13   resulted in "a substantial disruption of public, governmental, or

14   business functions or services" and "a substantial expenditure of

15   funds to respond to the offense."  (Id. ¶¶ 42-44, citing U.S.S.G.

16   § 2A6.1(b)(4).)  Defendant targeted Judge Leal based on her role as

17   the judge in defendant's family law matter, which leads to a six-

18   level increase.[5]  (Id. ¶ 45, citing U.S.S.G. § 3A1.2(b).)

19       Defendant has not clearly demonstrated his acceptance of

20   responsibility for his offense, and thus Probation did not subtract

21   any points on that basis.  (Id. ¶ 50, citing U.S.S.G. § 3E1.1.)  He

22   does not qualify for a zero-point offender reduction.  (Id. ¶ 51-52.)

23       Defendant's total offense level is thus 24.  (Id. § 53.)

24   Defendant has multiple pending criminal cases, but no criminal

25   convictions.  (Id. ¶¶ 59-67.)  Based on a criminal history category

26   of one and a total offense level of 24, defendant's guidelines

27

28   _____

        [5]  State court judges qualify as "official victims."  See, e.g.,
     United States v. Aman, 31 F.3d 550, 556 (7th Cir. 1994).

14

imprisonment range is 51 to 63 months.  (Id. ¶ 88.)  His guidelines

supervised release term is three years, and the fine range is $20,000

to $200,000.  (Id. ¶¶ 92, 99.)  A special assessment of $200 is

mandatory.  (Id. ¶ 98.)  The United States concurs with these

calculations.  Based on the factors set forth in 18 U.S.C. § 3553(a),

Probation recommends a high-end guidelines sentence of 63 months'

imprisonment.  (Dkt. 131 at 2.)

**V.    ARGUMENT**

The United States respectfully recommends that the Court

sentence defendant to 72 months' incarceration, reflecting an above-

guidelines sentence.  This sentence accounts for mitigating factors,

including defendant's difficult childhood and his history of mental

health struggles.  An above-guidelines sentence is nevertheless

warranted because: (1) the guidelines alone do not account for the

full scope of defendant's threats and victims; (2) defendant's

criminal history category understates his recidivism risk; and

(3) defendant's utter lack of remorse at trial increases the need for

specific deterrence.

**A.    Defendant's Childhood Traumas and Mental Health Issues Are
Mitigating Factors**

In this case, the Court ordered that a psychological evaluation

be done of the defendant.  (Dkt. 51.)  The evaluation revealed

struggles from defendant's personal history, including his childhood.

According to defendant, he was born premature in Mexico.  When he was

four years old, his parents divorced.  Afterwards, defendant lived

with his family in rented apartments, moving "close to 10 times in

three years."  Defendant reported extraordinarily serious childhood

traumas involving caretakers who should have loved and protected him.

Defendant also reported lacking basic life necessities, forcing him to panhandle for food beginning in high school.

Despite this difficult childhood, defendant persevered, completed high school at age 23, and began taking college courses. Meanwhile, he was also working nearly full time.  Beginning in 2021, however, defendant lost consistent employment and needed to rely on friends and family for support.  Defendant coped by turning to alcohol and stimulants.  According to defendant, he was previously diagnosed with one or more mental health conditions and was prescribed psychotropic medication.  In addition, it appears that in March 2023, defendant was placed on a two-day mental health hold in Orange County.  (Dkt. 111.)  At the time of his competency evaluation, however, defendant claimed to no longer experience any mental health symptoms, and the Court ultimately found defendant competent to stand trial.  (Dkt. 66.)  The Court may weigh these mitigating factors regarding defendant's personal history and characteristics in imposing a sentence that is not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

**B.    The Seriousness of Defendant's Threats Warrants a Strong Deterrent Sentence**

An above-guidelines sentence is nevertheless appropriate here pursuant to the factors of 18 U.S.C. § 3553(a).  The United States respectfully submits that a sentence of at least 72 months is necessary to reflect the seriousness of defendant's crime, provide adequate deterrence, and protect the public.

1.    The Nature and Circumstances of Defendant's Offenses

In this case, the guidelines do not account for the full scope of defendant's harms.  The guidelines calculation is based on

specific threats to murder a state court judge.  However, in the same course of conduct, defendant also threatened to commit a "mass shooting" at the courthouse.  (Trial Ex. 1.)  All court employees were notified, and they needed wonder with terror whether Friday, October 13, 2023, would be their last day alive — whether they, too, would see "blood on these streets," as defendant publicly promised in his manifesto video posted days before.  (Roldán Decl., Ex. 7.)  Moreover, in the same threats to Judge Leal, including the Count 2 email, defendant also attacked the Mother.  The context of defendant's rage at Judge Leal was domestic violence.  The crimes of conviction were motivated by defendant's fury at the Mother, her family, and all those whom he blamed for the custody dispute.

Although defendant received a guidelines enhancement for more than two threats (+2), there is no adjustment for the sheer scope of his threats or their foundation in domestic violence.  (Compare U.S.S.G. § 2A6.1 [threats: base offense level of 12], with 2A6.2 [domestic violence: base offense level of 18].)  In addition, he receives no enhancement for violating a court protection order (see U.S.S.G. § 2A6.1(b)(3)), although defendant certainly violated Judge Leal's protection order of the Mother over and over again, including on the same day he threatened Judge Leal's life.

The United States agrees with Probation's calculations based on the charged counts and is not seeking different guidelines.  However, the Court can and should consider the context of defendant's crimes, and the seriousness of his offenses, as part of the 18 U.S.C. § 3553(a) factors.  (See also 18 U.S.C. 3661 ["No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the

1  United States may receive and consider for the purpose of imposing an
2  appropriate sentence"] and U.S.S.G. § 1B1.4 ["In determining the
3  sentence to impose, the court may consider, without limitation, any
4  information concerning the background, character and conduct of the
5  defendant, unless otherwise prohibited by law."].)

6      2.   <u>Defendant's Personal History and Characteristics</u>

7      An above-guidelines sentence is also warranted because
8  defendant's criminal history category understates his recidivism
9  risk.  Defendant's terrifying embrace of his offenses – his delight
10  at the pain of others – and his total lack of remorse increases the
11  already substantial need for specific deterrence.

12      First, defendant has shown by his repeated restraining orders
13  violations that he cannot be deterred by legal orders.  (<u>See</u> PSR
14  ¶ 10.)  Indeed, defendant's defiance of court orders continued during
15  this trial.  (<u>See, e.g.</u>, Dec. 4, 2025 Tr. at 54-68 [lengthy sidebars
16  during defendant's closing].)  In addition, although defendant has no
17  criminal history points, this does not reflect his true recidivism
18  risk.  Had defendant not absconded to Mexico, he would have faced
19  three pending criminal prosecutions, and potential convictions, for
20  domestic violence protection order violations.  (<u>See</u> PSR ¶¶ 64-66.)

21      Second, the trial also demonstrated defendant's sadism, as he
22  reveled in re-watching (over and over again) a video of female abuse
23  he sent to Judge Leal or reading his own threats aloud with relish.
24  In his emails and manifesto video, defendant repeatedly assured his
25  listeners that he was not joking and that the "remainder of my life
26  will be dedicated to assassinating judges, attorneys, and a police
27  station's entire shift staff."  (Trial Ex. 7.)  Defendant promised,
28  "… there will be so much fucking blood on these streets.  We will

parade the fucking bodies behind our cars." (Roldán Decl., Ex. 7.) This Court should take defendant at his word.

Finally, during trial, defendant also displayed a dangerous nihilism: "Clearly I offended someone … I don't care …  I give no fucks," he said. (Dec. 4, 2025 Tr. at 46:23-25.)  "We all turn into maggots when we die. So then what?" he asked. (Id. at 48:16-17.) In his manifesto video, defendant likewise warned, "I will fucking die today to prove you wrong and teach you a fucking lesson …" (Trial Ex. 9G.)  Defendant's nihilism increases the risk that he will take a desperate action, so long as he can inflict hurt and pain on others.  Defendant's sentence must protect the public.

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to: (1) 72 months' incarceration; (2) three years of supervised release; (3) no fine; (4) a mandatory special assessment of $200; and (5) restitution of $22,798.12.  This sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).